## FORMALL, INC v COMMUNITY NATIONAL BANK

Docket No. 71848. Submitted April 4, 1984, at Detroit.—Decided
November 5, 1984. Leave to appeal applied for.

Formall, Inc., a Michigan plastics manufacturer formed in 1972
and, until June, 1981, wholly owned by David J. Forshee, was a
customer of Community National Bank of Pontiac. In 1977,
Formall took out two separate loans from Community National
of $198,204.66 and $45,683.69. Each loan was evidenced by a
promissory note. At about the same time, Community National
began offering a revolving credit line to Formall. The revolving
line of credit of $200,000 was renewed on April 30, 1981. The
line of credit was evidenced by a revolving credit note which
provided that the indebtedness was to become due upon de-
mand or on June 30, 1981, whichever occurred first. Each of
the notes provided that on default of any of the notes the bank,
without notice or demand, could call all the notes and collect
all collateral securing all the indebtedness and apply the
proceeds in payment of the indebtedness in the manner and
order the bank determined. The notes also contained a waiver
by Formall of presentment, demand, protest and notice of
dishonor and provided that, after default, the bank could set off
against the indebtedness any funds maintained by Formall
with the bank. The revolving credit note also contained a
provision that no event of default could be waived except by a
signed writing by an officer of the bank, that no waiver of
default would operate as a waiver of any other default or any
future default, that no single or partial exercise of any right or
privilege under the agreement would preclude future exercise
of the rights under the agreement and that no forbearance by
the bank in exercising any of its rights would constitute a
waiver of those rights.

In June, 1981, Forshee sold Formall to Form Plastics, Inc., a

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 17 Am Jur 2d, Contracts § 7.
  28 Am Jur 2d, Estoppel and Waiver §§ 156, 162.
[2] 73 Am Jur 2d, Summary Judgment §§ 26, 27.
[3] 17 Am Jur 2d, Contracts § 393.
  28 Am Jur 2d, Estoppel and Waiver §§ 28, 154, 158, 168.

corporation formed by Charles W. Jones and Albert Debicki for the purpose of acquiring Formall. Forshee remained as a part-time employee and consultant. On June 30, 1981, the revolving credit note became due. In early July, 1981, the bank contacted Debicki, who was in charge of day-to-day operations at Formall, requesting current financial information which was a prerequisite to renewal of the line of credit. No principal payments were made on the revolving credit note, although interest payments were accepted by the bank for the months of July, August and September of 1981. On August 10, 1981, the bank indicated in a letter to Debicki and Jones that the bank would demand payment on all three notes unless a financing package was submitted by August 14, 1981. That letter further indicated that further notifications would be sent to Forshee. Debicki requested that the bank forestall action on the notes because Jones was trying to sell his interest in Formall to Charles Baughman. An interest payment was accepted by the bank on September 21, 1981, and on the following day the bank wrote to Baughman concerning further loans to Formall. On or about October 2, 1981, Baughman informed the bank that he was not interested in purchasing Formall. On October 2, 1981, the bank sent a letter addressed to Forshee at his vacation home in South Carolina, indicating that if the entire matter was not resolved by October 13, 1981, the bank would exercise its legal remedies. A copy of this letter to Forshee was not sent to Formall, and there is no evidence that either Jones or Debicki knew of the letter. On October 23, 1981, the bank declared all three notes in default, set off Formall's deposits with the bank of $178,157.13 against the notes and informed Formall's account receivable debtors that payments should be made directly to the bank. The bank thereafter by telephone and letter informed Debicki of the actions taken. On October 28, 1981, Formall and Form Plastics merged, with Form Plastics being the surviving corporation although it then changed its name to Formall. Formall, Jones and Forshee brought an action against the bank in Oakland Circuit Court. Count I of the complaint alleged breach of contract and sought damages for lost earnings and profits, lost use of working capital, lost credit and good will and lost interest on the monies seized by the bank. The bank moved for partial summary judgment on Count I, averring that the existence of the anti-waiver clause protected it from judgment. Plaintiffs argued that the bank, on the basis of its acceptance of the interest payments in July, August and September, was estopped from demanding strict compliance with the provisions of the loan agreements and was under a duty to give direct notice to Formall, prior to declaring

a default, that it was insisting upon payment of the revolving credit note. The trial court, George H. LaPlata, J., granted partial summary judgment in favor of the bank as to Count I. Plaintiffs moved for reconsideration, which was denied. The trial court thereafter granted the bank's motion for summary judgment as to the remaining counts in plaintiff's complaint. Plaintiffs appeal. *Held:*

1. Under appropriate circumstances, an "anti-waiver" provision of a contract itself may be subject to waiver or modification as a result of the acts of the parties and a party may be estopped from relying upon an "anti-waiver" clause to defeat a claim that strict compliance with the provision was not necessary or sufficient.

2. While there is some threshold level below which a party may rely upon an "anti-waiver" clause, that threshold has been exceeded in this case. Accordingly, since the pleadings established that there was a close question as to whether the plaintiffs had reason to believe that the bank would not abruptly accelerate all three notes in accordance with the strict terms of the agreements, a question which must be decided by a trier of fact, the trial court erred in granting summary judgment in favor of the bank.

Reversed.

R. M. Daniels, J., dissented. He would hold that it is unnecessary to reach the question of whether the bank may be estopped from relying on the "anti-waiver" clause, since it is clear that the undisputed facts show that it is impossible to produce evidence at trial which would establish a prima facie case of waiver by the bank of strict compliance with the remedy provisions of the notes or a situation in which the bank should be estopped from requiring such strict compliance. He would affirm.

### Opinion of the Court

1. Contracts — Waiver — Estoppel — Non-Waiver Clauses.

There is a split of authority on whether a clause in a contract providing that no provision in a contract will be waived except where done in some specified manner may itself be waived or whether reliance upon such a clause may be subject to the defense of estoppel; the better view is that, under appropriate circumstances, even an "anti-waiver" clause of a contract may be subject to the application of the doctrines of waiver or estoppel and that, beyond some threshold level, the question of whether there has been a waiver of the "anti-waiver" clause or

whether a party should be estopped from reliance on such a clause is a question for resolution by the trier of fact.

DISSENT BY R. M. DANIELS, J.

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

*A motion for summary judgment on the ground that there is no genuine issue as to any material fact tests whether there is factual support for a claim and is to be tested by the pleadings, affidavits, depositions, admissions and other documentary evidence available to the court and is properly granted only where it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).*

3. CONTRACTS — WAIVER — ESTOPPEL.

*A waiver of a contract right to payment must arise by express agreement, a new promise to pay, a part payment or the failure to plead the right to payment and is a voluntary relinquishment of a known right; estoppel arises where some misleading conduct or language by one party is relied on by the other party to that party's prejudice and is applied by a court to prevent the party which engaged in the misleading conduct or made the misleading statement from exercising some contract right which under the circumstances would constitute a fraud.*

*Rickel, Earle & Wokas* (by *Donald L. Bramlage, Jr.),* for plaintiffs.

*Bodman, Longley & Dahling* (by *Kenneth R. Lango* and *Larry R. Shulman),* for defendant.

Before: ALLEN, P.J., and V. J. BRENNAN and R. M. DANIELS,* JJ.

ALLEN, P.J. We are asked to determine whether an "anti-waiver" clause in a revolving credit note for $200,000 may be the subject of estoppel based on the lender bank's prior course of conduct. The trial court answered this question in the negative and on April 29, 1983, issued an order for partial summary judgment dismissing Count I of plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiffs' complaint against defendant bank.[1] The question raised is one of first impression in Michigan. Other jurisdictions have split on the issue. Resolution of the issue requires a detailed statement of the facts.

Facts

Formall, a Michigan corporation, manufactures plastic components for the material handling aspects of the automotive industry. Formall was incorporated in 1973 by David J. Forshee who, prior to June, 1981, owned all of the outstanding capital stock of Formall. Subsequent to its incorporation, Formall became a customer of the Community National Bank of Pontiac, becoming an account depositor and borrower. On November 22, 1977, the bank loaned Formall the sum of $198,204.66. On December 1, 1977, the bank loaned Formall the sum of $45,683.69. Both loans were evidenced by promissory notes. At approximately the same time, the bank began offering a revolving credit line to Formall. On April 30, 1981, the bank renewed a $200,000 line of credit which earlier had been extended to Formall. The loan was evidenced by a revolving credit note which provided that the indebtedness was to become due upon demand or upon June 30, 1981, whichever occurred earlier.

Each of the promissory notes provided that, upon the event of a default, the bank, without notice or demand, could collect all collateral securing the indebtedness and apply the proceeds of the collateral in payment of the indebtedness in the

[1] On May 24, 1983, the trial court granted the bank's motion for summary judgment with respect to the balance of plaintiffs' complaint. The parties agree that the trial court's action with respect to Count I is dispositive of the remaining counts and accordingly brief only the single issue on appeal.

manner and order which the bank determined. The notes also contained a waiver by Formall of presentment, demand, protest and notice of dishonor. The notes provided that the bank, after default, could set off against the indebtedness any amount in any bank accounts maintained by Formall with the bank. The revolving credit note (RCN) contains an "anti-waiver" clause which reads:

"No Event of Default shall be waived by the Bank except in a writing signed by an officer of the Bank, and no waiver of any Event of Default shall operate as a waiver of any other Event of Default or the same Event of Default on a future occasion. No single or partial exercise of any right, power or privilege hereunder or under the Agreement * * * nor any delay in the exercise thereof, shall preclude other or further exercise of the rights of the parties hereto. No forbearance on the part of the Bank in enforcing any of its rights hereunder * * * shall constitute a waiver of any of the terms hereof * * *."

Following the execution of the revolving credit note, Forshee commenced negotiations with Charles W. Jones for the sale of Formall. Early in May, 1981, Jones and Albert Debicki, then president of Formall, came to the bank and spoke with Barry Mahloy, loan officer, in connection with Formall's loans. On June 11, 1981, Forshee sold his interest in Formall to Form Plastics, Inc., a corporation formed by Jones and Debicki for the sole purpose of acquiring Formall. Forshee remained a part-time employee and consultant, retaining the title of senior managerial level production and market specialist.

On June 30, 1981, the RCN's principal amount of $135,334.90 became due. In early July, 1981, Mahloy contacted Debicki (who was now in charge

of Formall's day-to-day operations) and requested
that Debicki forward current financial information
to the bank as a prerequisite to renewal of the
credit line. Debicki agreed to this, but Mahloy had
to contact him several times in July, each time
informing Debicki that the RCN was due. No
payments were made on the principal balance. The
bank did accept three interest payments on July 9,
August 19, and September 21 of 1981. During
these three months, the bank sent form notices to
Formall stating that the RCN was due and de-
manding payment. Mahloy's affidavit dated March
29, 1983, states that these notices were sent 5, 10,
15, 30, 60 and 90 days after the RCN expired.
Formall denies receiving these notices. On August
10, 1981, Mahloy sent a letter to Debicki and
Jones stating that the bank would demand pay-
ment of all three notes unless a proper financing
package was submitted by August 14, 1981. The
letter stated that further notifications would be
sent to Forshee. Mahloy admitted that a package
was submitted somewhere in the middle of August
soon after the deadline.

Debicki requested that the bank forestall action
on the notes since Jones was trying to sell his
interest in Formall to Charles Baughman. The
bank accepted an interest payment on September
21, 1981. The following day, Mahloy wrote Baugh-
man, outlining the bank's proposals regarding fur-
ther loans to Formall. On or about October 2,
1981, Baughman informed Mahloy that he was not
interested in purchasing Formall. After learning
this, Mahloy sent a registered letter dated October
2, 1981, to Forshee at his vacation home in Hilton
Head, South Carolina. The letter stated that un-
less the entire matter was resolved by October 13,
1981, the bank would exercise its legal remedies.
Although Forshee admitted signing for the letter,

he denied receiving it. Mahloy did not send a copy of this letter to Formall, stating he did not do so because in his mind Dave Forshee was the borrower.

There is no evidence that Forshee told either Jones or Debicki about the October 2 letter. Forshee testified that he spoke with Jones about once a week, and spoke with Debicki only occasionally.

No other action was taken by either party until October 23, 1981, when the bank declared all three notes in default, set off Formall's deposits in the amount of $178,157.13 against the notes, and informed Formall's account receivable debtors that payments should be made directly to the bank. Mahloy informed Debicki of this action by telephone before sending him a letter which detailed the bank's actions. Debicki then attempted to withdraw $90,000 from Formall's account without success.

On October 28, 1981, Formall and Form Plastics merged. Form Plastics was the surviving corporation, but then changed its name to Formall. By January 6, 1982, the RCN was paid in full. Apparently, Forshee was again in charge of Formall.

The plaintiffs filed their complaint on January 4, 1982. Count I alleged breach of contract and damages resulting from lost earnings and profits, lost use of working capital, lost credit and good will, and lost interest on the monies seized by the bank to set off the notes. The bank moved for partial summary judgment, averring that the existence of the "anti-waiver" clause protected the bank from judgment. The motion was heard April 19, 1983, following which the trial court granted summary judgment to defendant as to Count I based on GCR 1963, 117.2(3) saying:

"*The Court:* Well, you know, there's no question that

the court is sympathetic to the plaintiff's position because I think it would be much better practice for a creditor in a situation such as this to certainly put the other side on notice that certain things are going to happen, especially where they've been dealing.

"The only problem I have with the plaintiff's position, of course, is that he's going to ask this jury to—he wants the jury to rewrite that contract and I don't think that's proper.

"I'll grant the motion."

Formall then moved for reconsideration. On May 24, 1983, that motion was denied and the bank's motion for summary judgment as to the remaining five counts was granted.[2] Formall appeals all three orders. However, because the trial court's action on Count I is dispositive of the remaining counts, only the legal issue identified in Count I is considered in this opinion.

### Claims Advanced by the Parties

Plaintiffs contend that the bank's conduct between July 1, 1981, when it accepted the first payment of interest, and October 22, 1981, when it declared the RCN and the two 1977 notes in default and seized all funds in the company's bank accounts, *estopped* the bank from insisting on strict compliance with the contract terms and imposed a duty on the bank to reasonably notify Formall (not just Forshee) prior to declaring a default that timely payment would be insisted upon. By accepting interest payments in July, August and September 1981, by not making formal demand on Formall for payment of the RCN and by implicitly encouraging the negotiations between

[2] The remaining five counts alleged negligence, tortious interference with business relations, defamation and personal damages to Jones and Forshee.

Jones, Baughman and Formall, plaintiffs claim the bank waived, or at least was estopped from asserting, the right to call all three notes due without further notice to Formall. Had this been done, Formall would not have suffered the loss of funds seized by the bank to satisfy the two 1977 notes which were not in themselves in default, but which were declared in default by virtue of the cross-provisions in the RCN.

Plaintiffs further argue that there is an important difference between waiver and estoppel. Waiver is the intentional abandonment of a known right whereas estoppel may arise even where there is no intention to abandon or relinquish an existing right. *Dahrooge v Rochester German Ins Co,* 177 Mich 442, 451-452; 143 NW 608 (1913); 28 Am Jur 2d, Estoppel and Waiver, § 30, pp 633-634. The "anti-waiver" clause in the contract refers only to waiver. It says nothing about whether forbearance precludes estoppel. *Ergo,* argue plaintiffs, reversal is mandated on grounds of contract construction alone. But even if the "anti-waiver" clause in question is broadly construed to include estoppel, the weight of authority

"is that an 'anti-waiver' clause, like any other term in the contract, is itself subject to waiver or modification by course of performance and that whether such waiver or modification has occurred is a question for the factfinder." *Westinghouse Credit Corp v Shelton,* 645 F2d 869, 873-874 (CA 10, 1981).

Defendant bank argues that, contrary to plaintiffs' claim, the facts show that the bank did not waive any of its collection rights and that Formall had no grounds to believe that there had been a waiver. Defendant refers to the following facts which defendant asserts in particular support defendant's position. After receiving the three pay-

ments of interest, the bank continued to send Formall past due notices stating that the full principal amount of the RCN was due and payable; these notices were sent 5, 10, 15, 30, 60 and 90 days after the RCN expired. After Mahloy informed Formall in writing that the bank intended to accelerate and declare all three notes due and payable, Formall induced the bank to hold off because Formall had a possible sale to Baughman. On October 2, 1981, when the bank learned the sale to Baughman had fallen through, the bank, in accordance with the procedure set forth in its letter to Formall of August 14, 1981, sent a registered letter to Forshee stating it would call all notes due if the RCN was not paid by October 13, 1981. Formall did not make any payments on the RCN, not even interest, during the whole month of October. Also, each of the three promissory notes stated that, upon event of default, the bank, *without notice or demand,* could call all three notes due.

The bank also argues that *Westinghouse Credit Corp* is distinguishable on policy grounds since it involved a conditional sales contract on which the buyer had already made monthly payments for three and one-half years. Whereas, it is unfair to accelerate a debt when late payments had been repeatedly made, it is not unfair where, as here, the RCN had already matured. Further, contrary to *Westinghouse Credit Corp,* the weight of authority regarding "notice after waiver" is that a creditor can accelerate and pursue collection remedies, *without notice,* even after accepting late payments.[3]

_____

[3] *General Grocer Co of Illinois v Bachar,* 51 Ill App 3d 907; 365 NE2d 1106 (1977); *Fulton National Bank v Horn,* 239 Ga 648; 238 SE2d 358 (1977); *McAllister v Langford Investigators, Inc,* 380 So 2d 299; 28 UCC Rep 1205 (Ala Civ App, 1980); *Universal CIT Credit Corp*

Finally, the bank argues that it would be unsound public policy to hold that an "anti-waiver" clause is itself subject to modification and that whether such waiver or estoppel had occurred is always a question for the factfinder. To so hold would induce great uncertainty into the bank-debtor relationships and would further damage Michigan's already badly tarnished business climate reputation. It would force banks to invoke collection remedies immediately rather than risking the chance that any forbearance or acceptance of interest would constitute estoppel. That would not be good for either banks or debtors.

## DECISION

The parties correctly indicate that Michigan courts have not addressed the precise issue involved in this appeal. However, *Oakland National Bank v Anderson,* 81 Mich App 432; 265 NW2d 362 (1978), *lv den* 404 Mich 827 (1979), is analogous although surprisingly it is not mentioned by either party. There, the Court considered whether the bank waived its right to accelerate payment of two loans based on its acceptance of late payments after it instituted a claim and delivery action. The defendant claimed waiver and cited *Theatre Equipment Acceptance Corp v Betman,* 259 Mich 245; 242 NW2d 903 (1932). The trial court held for the plaintiff bank. This Court affirmed saying:

"*Betman* does not control here. The bank had properly accelerated the entire balance of the note by filing a complaint for claim and delivery based on the accelerated balance. *Cf. Hawes v Detroit Fire & Marine Insurance Co,* 109 Mich 324; 67 NW 329; 63 Am St 581

v *Middlesboro Motor Sales, Inc,* 424 SW2d 409; 4 UCC Rep 1126 (Ky, 1968); *Hale v Ford Motor Credit Corp,* 374 So 2d 849; 13 ABR 2204; 26 UCC Rep 1383 (Ala, 1979).

(1896). *The acceptance of defendant's check by the bank served to reduce defendant's indebtedness on the note but it did not cure all the defaults which existed at the time, including the August 15 payment, nor did it waive the acceleration of the balance which had already occurred.* See, *Paul Londe & Associates, Inc v Rathert,* 522 SW2d 609 (Mo App, 1975), *US Savings Bank v Continental Arms, Inc,* 338 A2d 579 (Del, 1975).

"The trial court properly concluded that defendant did not state a meritorious defense to the bank's action on the first note. That matter is properly concluded." 81 Mich App 436-437 (emphasis supplied).

See also Snider & Rochkind, *Commercial Transactions, 1978 Annual Survey of Michigan Law,* 25 Wayne L Rev 275, 295 (1979).

In *Paul Londe,* cited in *Anderson, supra,* the court said:

"We have concluded that the mere acceptance of a payment on a delinquent note does not waive an acceleration of payments which has already been invoked. Waiver is the intentional relinquishment of a known right. *Greenberg v Koslow,* 475 SW2d 434, 438[7] (Mo App, 1971). Where, as here, no express waiver is shown, in order to prove an implied waiver the acts or omissions of the party alleged to have waived his rights must be so consistent with and indicative of the intention to relinquish the particular right or benefit that no other reasonable explanation is possible. *Berger v McBride & Son Builders, Inc,* 447 SW2d 18, 20[4] (Mo App, 1969)." 522 SW2d 611.

In *US Savings Bank,* cited in *Anderson, supra,* which involved a summary judgment in a mortgage foreclosure action, the court stated:

"A valid enforceable acceleration provision may be waived by the mortgagee's acceptance of the amount in default prior to his election to accelerate. * * * Nevertheless, it is clear that the mortgage *[sic]* must accept

the *entire* sum in arrears, not a portion thereof, in order to occasion a waiver of the acceleration provision contained in a mortgage." 338 A2d 583.

Significantly, all three cases cited above indicate a strong reluctance by Michigan courts to find waiver or estoppel except under the most compelling circumstances. All three are factually less favorable to the bank than the situation in the instant case. In none was there an "anti-waiver" clause. All involved installment notes rather than a past due demand note. Furthermore, in the instant case the bank accepted only interest rather than principal payments.

When we look to other states which have dealt with situations involving "anti-waiver" clauses, we find a split of authority. As was acknowledged in *Westinghouse Credit Corp,* some states have

"construed the 'anti-waiver' clause strictly according to its terms, thus conclusively precluding a creditor's pattern of accepting late payments from operating as a modification or waiver of the contract's default provisions. See *Hale v Ford Motor Credit Co,* 374 So 2d 849, 853 [26 UCC Rep 1383] (Ala, 1979); *Fair v General Finance Corp,* 147 Ga App 706; 250 SE2d 9 [25 UCC Rep 905] (1978); *Universal CIT Credit Corp v Middlesboro Motor Sales, Inc,* 424 SW2d 409, 411 [4 UCC Rep 1126] (Ct App, Ky, 1964)." 645 F2d 873.

On the other hand, other states have followed *Westinghouse* and have held that an "anti-waiver" clause is itself subject to estoppel given the correct set of facts and that whether the correct set of facts is present is a question for the trier of fact to decide. *Smith v General Finance Corp,* 243 Ga 500; 255 SE2d 14 (1979), *Van Bibber v Norris,* 404 NE2d 1365, 1373-74 (Ind App, 1980), *Woods v Monticello Development Co,* 656 P2d 1324, 1327

(Colo App, 1982); *National Livestock Credit Corp v Schultz,* 653 P2d 1243, 1247 (Okla App, 1982).

The above cases are only representative of the split of authority on the question raised in the opening sentence of this opinion. They come to various conclusions based on the factual situations presented in each case. They are, however, sufficiently analogous to lend support to both sides of the instant appeal. This in itself suggests the instant case should have been submitted to the jury. Persuasive arguments can be made both ways from the facts in the record.

On the one hand, the bank was involved in the proposed sale of the company to new owners. Although registered letters were sent to Formall stating that the RCN was due, those notices did not state that the other two notes would also be accelerated. Even after some four such notices were sent, the bank continued to accept payments of interest. Finally, and most importantly, the bank may well have erred when it failed to send Formall a copy of the registered letter of October 2, 1981, accelerating the due date on all three notes. Whether Forshee, to whom the registered letter was sent, was then an agent of Formall, was itself a disputed question of fact. These actions by the bank, collectively considered, may well have lulled Formall into a false sense of security.

On the other hand, there are other facts which strongly suggest that the bank's conduct did not go so far as to lead Formall to believe the bank would not accelerate all three notes. The bank's August 10, 1981, letter to Debicki (who was then in charge of Formall) clearly stated that the bank intended to demand full payment on all loans. Further, it's incredulous to believe that Forshee, who admitted signing a return receipt for the letter, never received the October 2, 1981, letter. Given the sharp

conflict in facts, we believe the proper procedure *in the instant situation* is the procedure laid down in *Westinghouse Credit Corp.*

However, in so doing, we confine our decision to the facts of this case alone. We decline to make a jury question out of every situation where a lender had accepted *any* payments, even though small, or temporarily deferred acceleration, or otherwise forbore or desisted from a strict compliance with the rights of collection. There reasonably must be a threshold below which the "anti-waiver" clause is protection for the bank. Just what that threshold level should be remains to be decided on a case by case basis. Suffice it to say, given the facts of the instant case, the threshold level has been exceeded. Because the transcript contains testimony and facts from which a close question is presented as to whether the plaintiffs had reason to believe the bank would not so abruptly accelerate all three notes according to the strict terms thereof, we believe the trial court erred in granting summary judgment to defendant.

Reversed. Costs to plaintiffs.

V. J. BRENNAN, J., concurred.

R. M. DANIELS, J. *(dissenting)*. I respectfully dissent. A motion for summary judgment pursuant to GCR 1963, 117.2(3) is designed to test whether there is factual support for a claim. Although a court must not resolve disputed questions of fact in resolving such a motion, the motion should be granted if, considering the affidavits and the other available evidence, it is impossible for the claim asserted to be supported by evidence at trial. See, for example, *Partrich v Muscat,* 84 Mich App 724, 730; 270 NW2d 506 (1978). Plaintiffs here rely on theories of waiver and estoppel. In *Dahrooge v*

*Rochester German Ins Co,* 177 Mich 442, 451-452;
143 NW 608 (1913), the Court explained:

"It has been said that a waiver must arise either by
express agreement, a new promise to pay, a part pay-
ment, or a failure to plead. A waiver is a voluntary
relinquishment of a known right. Estoppel is based on
some misleading conduct or language of one person
which, being relied on, operates to the prejudice of
another, and is applied to the wrongdoer by the court in
denial of some right, which otherwise might exist, to
prevent a fraud."

On the record presented here, I find it unneces-
sary to consider the effect of the "anti-waiver"
clause of the revolving credit note. Even if the
"anti-waiver" clause has no effect whatever, the
undisputed facts show that it will be impossible for
plaintiffs to produce evidence at trial to establish a
prima facie case of waiver or estoppel.

The parties' revolving credit note contained a
provision by which plaintiff company waived any
right to notice before defendant bank pursued its
remedies for default. The note was due on demand
or on June 30, 1981, whichever occurred first.
After June 30, however, the bank did not immedi-
ately pursue its remedies for default, but instead
entered into negotiations with the company. On
August 10, the bank gave the company an ultima-
tum. The bank announced that it would pursue its
remedies for default unless the company submitted
a refinancing proposal for the loan by August 14.
At or near the deadline, the company responded
by telling the bank that negotiations were under
way for sale of the company to Charles Baughman
and that Baughman would arrange refinancing.
On September 22, the bank submitted a proposal
for refinancing to the company and Baughman.
About October 1 or 2, Baughman told both the

company and the bank that the refinancing pro-
posal was unacceptable, and he broke off the nego-
tiations for the purchase of the company. On
October 23, the bank declared the loan to be in
default and began to pursue its various remedies.

There is no evidence here to suggest either a
voluntary relinquishment of any relevent right by
the bank or any misleading conduct or language
by the bank on which the company could have
relied to its prejudice. Having responded to the
bank's ultimatum of August 10 with what
amounted to a request that the bank refrain from
pursuing its remedies for default while negotia-
tions with Baughman were in progress, the com-
pany had no basis for believing that the bank's
forbearance would continue after those negotia-
tions were broken off. The bank's acceptance of
interest payments from the company is immate-
rial, because the bank accepted no interest pay-
ments after the negotiations were broken off. The
factual issues concerning the various notices the
bank claims to have sent to the company or its
agents are not material. Even if the bank's con-
duct during July and early August could have
induced the company to believe that, despite the
provision of the note, the bank would not pursue
its remedies for default without first giving the
company notice, the bank's ultimatum of August
10 provided the company with notice that the
bank would pursue its remedies unless its condi-
tions were met. Nothing which occurred subse-
quent to the ultimatum could have induced the
company to believe that further notice would be
given. The company had actual knowledge of the
breaking off of the negotiations for which the
company had induced the bank to refrain from
pursuing its remedies. No further notice was re-
quired.

Although I believe that it is unnecessary to discuss the effect of the "anti-waiver" clause in order to resolve this case, I am constrained to point out the problems with the majority's discussion of that clause. The majority notes a split of authority in other jurisdictions as to the effect of such a clause, but then suggests that a split of authority on a legal question is a reason for submitting the case to a jury. The majority (1) finds a sharp conflict in the evidence, (2) states that some threshold must exist below which the "anti-waiver" clause is no protection for the bank, (3) does not offer any guidance as to the location of that threshold, (4) finds that the threshold has been exceeded on the facts presented here, and (5) again finds a close question of fact. It is impossible to tell from the majority opinion what principles of law the majority is applying, whether the majority intends that the jury should consider the "anti-waiver" clause, and what instructions should be given to the jury to assist it to resolve this issue.

I would affirm.