Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2013, 7:00 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**RICHARD K. MUNTZ**
LaGrange, Indiana

ATTORNEY FOR APPELLEE:

**MARYLYN K. L. ERNSBERGER**
Stout Law Group, P.C.
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT J. LAMBRIGHT, SHIRLEY A. LAMBRIGHT, and DUTCH LAND, INC. a/k/a DUTCHLAND, INC., | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 44A04-1211-CC-589 |
| DAWN M. GREGORY, as Guardian for Donna Lee, | ) ) ) ) | |
| Appellee-Plaintiff. | ) ) | |

APPEAL FROM THE LaGRANGE CIRCUIT COURT
The Honorable J. Scott VanDerbeck, Judge
Cause No. 44C01-1111-CC-258

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In 2003, Robert J. Lambright, Shirley A. Lambright, and Dutch Land, Inc. (collectively, "the Lambrights") borrowed $225,000 from Wilber and Donna Lee and signed a promissory note.[1]  For several years, the Lambrights made payments in excess of the minimum due, although the payments were frequently late.  In 2010, the Lambrights ran into financial difficulties, and believing that they were ahead in their payments, they began making smaller payments, and for several months, they did not make any payment at all.  At some point, Dawn M. Gregory, who is the Lees' daughter, was appointed guardian of Donna.  (We will refer to the Lees and Gregory collectively as "the lenders.")  Gregory hired an attorney, who contacted the Lambrights by letter in March 2011 in an attempt to collect on the note.  The Lambrights responded with a letter explaining why they had decreased their payments and proposing that they pay $1000 per month until the note was paid off.  Gregory rejected this offer and filed suit against the Lambrights.

Gregory filed a motion for summary judgment, and her designated evidence included a letter from a certified public accountant.  The letter explained how the CPA had interpreted the terms of the note and included a spreadsheet that calculated the total due, including late fees and interest, at $149,522.70.  The Lambrights objected to this evidence because it was not in affidavit form, and they also argued that the lenders had waived late fees and other penalties by their longstanding pattern of accepting late payments.  The trial court granted

---

[1]  Robert and Shirley signed the note as individuals, and Robert also signed as Dutch Land's president and secretary.

2

summary judgment for Gregory and entered judgment in the amount of $149,522.70 plus expenses and costs.

The Lambrights appeal and raise four issues, two of which we conclude warrant reversal. First, the Lambrights are correct that the letter from the CPA was not in an admissible format and therefore was not properly part of the designated evidence. Second, the note states that it is to be governed by Michigan law, and the Lambrights have shown that, pursuant to Michigan law, there is a genuine issue of material fact as to whether the lenders waived enforcement of various penalty provisions contained in the note. Therefore, we reverse the grant of summary judgment and remand for further proceedings.

**Facts and Procedural History**

On October 1, 2003, the Lambrights borrowed $225,000 from the Lees and signed a promissory note in the Lees' favor. The note required the Lambrights to make payments of $1447.89 on the first of each month starting with November 1, 2003. The note was to be paid in full on or before October 1, 2018. The note required the Lambrights to pay 2% interest. The note contains the following provisions regarding default and late payments:

> In the event Borrower defaults under the terms of this Note or under any mortgage(s) or other security instruments (the "Security Documents") given as collateral for this Note, then Lender shall have the right at any time to declare the principal balance due under this Note plus accrued interest and any other indebtedness due under the terms of this Note or the Security Documents immediately due and payable.
>
> In the event any payment due hereunder is not received by Lender on or before the due date, Lender may charge Borrower a late installment charge equal to five (5%) percent of the late payment. Acceptance by Lender of any such late charge shall not waive any default hereunder.

3

On default in the payments due hereunder or in the performance of any covenant, term or condition of the Security Documents given by Borrower as security for this Note, then the holder hereof may declare the entire amount evidenced hereby to be immediately due and payable without notice.

While any default exists in the making of any payment hereunder, whether by acceleration or otherwise, the undersigned further promises to pay, on demand, default interest at the rate of ten (10%) percent per annum.

Each maker, endorser, guarantor, or any other party liable hereon severally waives demand, presentment, notice of dishonor and protest of this Note and consents to any forbearance, extension or postponement of the terms of the obligation represented hereby.

Appellants' App. at 7. We will refer to these provisions collectively as "the penalty provisions." The note states that it shall be governed and construed in accordance with the laws of the State of Michigan.

The Lambrights chose to round the payment up to $1500. In April 2004, the Lambrights made their payment on the thirteenth rather than the first. Thereafter, the Lambrights consistently made late payments, although they did ultimately pay $1500 each month. According to Robert's affidavit, around April 2005, Donna indicated that Wilber was ill and asked the Lambrights to increase their monthly payment. In April 2005, the Lambrights started paying $1650 per month. Donna later indicated that Wilber had been institutionalized and again asked the Lambrights to increase their payments. In November 2005, the Lambrights paid $2650, and they continued to pay that amount almost every month until January 2010. Although payments were consistently late, there is no indication that the Lees sought to enforce any of the penalty provisions. Thus, the Lambrights believed that they were ahead in their payments by approximately $30,000, and due to their own economic

difficulties, they started cutting back on their payments. They paid $500 in May 2010, $500 in June 2010, $400 in August 2010, $500 in November 2010, and $500 in December 2010.

At some point, Gregory, who is the Lees' daughter, was appointed guardian over Donna. On March 15, 2011, Gregory, through her attorney, sent the Lambrights a letter indicating that the outstanding balance on the note was $72,912.74 "plus interest" and that legal action would be taken unless the Lambrights contacted Gregory's attorney within ten days. *Id*. at 58. Robert sent Gregory a letter dated April 2, 2011, in which he indicated that he believed that they were ahead in their payments. Robert noted that dividing the balance of $72,912.74 by the remaining number of months would result in a monthly payment of $801.24, and he offered to pay $1000 per month until the note was paid in full. Robert's affidavit states that they tendered payments of $1500 on May 16, June 15, July 14, and August 26, 2011, and Gregory refused each of these payments.

On November 9, 2011, Gregory filed a complaint in LaGrange Circuit Court against the Lambrights, who are residents of LaGrange County. The complaint alleged that the Lambrights had defaulted on the note, and attached to the complaint were a copy of the note and a letter from a certified public accountant, Randy D. Fry. Gregory had hired Fry to calculate the balance due on the note. In the first two pages of the letter, Fry explained how he calculated the balance, including his assumptions as to how the excess payments should be applied. These pages are followed by a spreadsheet showing the running balance after applying each month's payments and the amount of fees and interest that were due according to Fry's interpretation of the note. Fry's spreadsheet shows a balance of $149,522.70 as of

5

September 2011.

In their answer, the Lambrights asserted that this letter "contains numerous legal conclusions stated by Randy D. Fry, who is not a lawyer and therefore not competent to state legal conclusions or the results thereof." *Id*. at 20. However, they admitted that the spreadsheet columns labeled "Date Paid," "Check Number," and "Amount Paid" accurately reflected the payments that they had made. *Id*. Under the heading "Statement of Affirmative Defenses," the Lambrights alleged that they were not in default, were ahead in their payments, and that the lenders had rejected several tendered payments. *Id*. at 21.

On June 19, 2012, Gregory filed a motion for summary judgment. Gregory designated the following evidence:

1. Promissory Note

2. Complaint

3. Schedule from Randy Fry, C.P.A.

4. Account Balance Sheet

5. Affidavit In Support of Attorney Fees

*Id*. at 26. The "Account Balance Sheet" is labeled Plaintiff's Exhibit 4, and we will refer to it hereafter as Exhibit 4. Exhibit 4 is a spreadsheet that shows essentially the same payments as Fry's spreadsheet, but does not appear to calculate late fees or additional interest. Exhibit 4 shows a balance of $72,912.74 as of December 20, 2010.

On July 20, 2012, the Lambrights filed a response and an affidavit from Robert. In the response, the Lambrights argued that the material from Fry could not be considered because

it was not in the form of an affidavit. Robert's affidavit states that Exhibit 4 "correctly states the payments made on the promissory note, up to December 20, 2010." *Id*. at 56. The affidavit includes two exhibits, the March 15, 2011 letter from Gregory's attorney and the April 2, 2011 letter that Robert wrote in response.

On August 8, 2012, the trial court held a hearing on Gregory's summary judgment motion, and on October 19, 2012, the court issued an order granting the motion. The order incorporated Fry's letter and spreadsheet and found that the unpaid balance was $149,522.70 as of September 1, 2011. The court ordered the Lambrights to pay that amount plus expenses and costs. The Lambrights now appeal.

### Discussion and Decision

Our standard of review for summary judgment is well settled:

Indiana Trial Rule 56(C) provides that summary judgment is appropriate when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact and that judgment as a matter of law is appropriate. If the moving party meets these two requirements, the burden shifts to the nonmovant to specifically designate facts showing that there is a genuine issue for trial. When reviewing summary judgment, we apply the same standard as the trial court and construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. Where material facts conflict, or undisputed facts lead to conflicting material inferences, entry of summary judgment is inappropriate. We carefully scrutinize a trial court's grant of summary judgment to assure that the losing party is not improperly prevented from having its day in court.

*Crown Coin Meter Co. v. Park P, LLC*, 934 N.E.2d 142, 146 (Ind. Ct. App. 2010) (citations omitted).

7

## I.  *Inadmissible Evidence*

The Lambrights argue that the trial court erred by considering the content of Fry's

letter because it is not an affidavit or other admissible form of evidence.

> In ruling on a motion for summary judgment, the circuit court may consider only properly designated evidence that would be admissible at trial. *Kronmiller v. Wangberg,* 665 N.E.2d 624, 627 (Ind. Ct. App. 1996). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Ind. Trial Rule 56(E).

*Hays v. Harmon*, 809 N.E.2d 460, 464 (Ind. Ct. App. 2004), *trans. denied.*  "Unsworn

statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Indiana Univ.*

*Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000).

Gregory does not dispute that Fry's letter is not admissible, but contends that the

court's use of it is not reversible error because the Lambrights admitted that Fry's

spreadsheet accurately reflects the amount and date of the payments that they made.  Gregory

asserts that a straightforward application of the terms of the note to this data results in a

balance of $149,522.70 and that the judgment is therefore correct regardless of whether the

trial court relied on Fry's letter.

We disagree.  It is apparent from his letter that Fry's calculation is based on certain

assumptions as to how the terms of the note should apply to the payments received.[2]  Most

---

[2]  The Lambrights characterize these assumptions as legal conclusions, which they contend are not properly part of the designated evidence. *See Estate of Shebel v. Yaskawa*, 713 N.E.2d 275, 280 (Ind. 1999) (assertions of legal conclusions in an affidavit are not proper designated evidence).  Because we have found that the document as a whole is not properly part of the designated evidence, we decline to evaluate the individual statements to determine whether they might be inadmissible on additional grounds.

notably, Fry states, "If payments received were in excess of the minimum payment, the excess amount was applied first to interest, then late charges and then applied to the principal." Appellants' App. at 10. However, the note is completely silent as to how excess payments should be applied. Given the large number of irregular payments, this could potentially make a significant difference in the calculation. In addition, Fry clearly assumed that the penalty provisions took effect automatically on the second day of the month if payment had not yet been received and that the lenders had not waived or partially waived enforcement of those provisions. However, as we will discuss in more detail below, we believe that there is a genuine issue of material fact regarding whether the lenders waived or partially waived enforcement of the penalty provisions. The trial court clearly relied on both Fry's mathematical calculations and his underlying assumptions. Fry's letter was not properly part of the designated evidence, and the trial court erred by considering it.

## II. *Significance of the March 2011 Letter*

The Lambrights argue that the letter sent by Gregory's counsel in March 2011 was a "demand letter," and by claiming that the balance due was $72,912.74 plus interest, Gregory waived "any claims to recalculate the payments to claim late fees and an enhanced interest rate." Appellants' Br. at 7. Gregory characterizes the letter as an offer to compromise, which is inadmissible to prove the amount of her claim pursuant to Indiana Evidence Rule

408.[3] The Lambrights do not cite any authority that would assist us in determining whether the letter should be characterized as a demand letter rather than an offer to compromise or under what circumstances a demand letter constitutes a waiver of any additional damages that might be available. As such, we conclude that the Lambrights have waived this issue. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on...."); *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied* (2006).

### III. Waiver of Penalty Provisions

The Lambrights argue that there is a genuine issue of material fact as to whether the lenders waived the right to enforce the penalty provisions by accepting late payments for several years. Gregory argues that the terms of the note are unambiguous and that she has not waived enforcement of the penalty provisions.

The note states that it shall be governed and construed in accordance with the laws of the State of Michigan.

> The main goal of contract interpretation generally is to enforce the parties' intent. *Mahnick v. Bell Co.*, 256 Mich. App. 154, 158-159, 662

---

[3] In a related argument, the Lambrights assert that there is a genuine issue of material fact as to the amount due because Fry's letter calculates the balance due at $149,522.70, whereas the letter from Gregory's counsel a few months earlier stated that the balance due was $72,912.74 plus interest. Gregory contends that the difference between the two is that the letter from her counsel did not include a calculation of late fees and interest. Because we have concluded that Fry's letter was not properly part of the designated evidence, we decline to determine whether these two amounts are truly in conflict.

N.W.2d 830 (2003). But when the language of a document is clear and unambiguous, interpretation is limited to the actual words used, *Universal Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496, 628 N.W.2d 491 (2001), and parol evidence is inadmissible to prove a different intent, *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 722, 565 N.W.2d 401 (1997). An unambiguous contract must be enforced according to its terms. *Mahnick*, *supra* at 159, 662 N.W.2d 830.

*Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004), *appeal denied*.

The Lambrights argue that, pursuant to Michigan law, parties to a contract can waive enforcement of provisions such as an acceleration clause by their conduct. In support, they cite *Formall, Inc. v. Community National Bank of Pontiac*, 360 N.W.2d 902 (Mich. Ct. App. 1984). In that case, a bank made two loans to Formall and also gave it a revolving line of credit. All three promissory notes provided that, in the event of a default, the bank could accelerate all three notes. The revolving credit note also contained an "anti-waiver" clause, which stated:

> No Event of Default shall be waived by the Bank except in a writing signed by an officer of the Bank, and no waiver of any Event of Default shall operate as a waiver of any other Event of Default or the same Event of Default on a future occasion. No single or partial exercise of any right, power or privilege hereunder or under the Agreement * * * nor any delay in the exercise thereof, shall preclude other or further exercise of the rights of the parties hereto. No forbearance on the part of the Bank in enforcing any of its rights hereunder * * * shall constitute a waiver of any of the terms hereof * * *.

*Id*. at 903.

The revolving credit note was due on June 30, 1981, but Formall did not pay the balance. In July 1981, the bank contacted Formall and asked it to send current financial information in order to renew the line of credit, but Formall did not comply until the following month. The bank claimed that it sent multiple notices to Formall stating that the

11

revolving credit note was due and demanding payment; however, Formall denied having received the notices. Formall made interest payments in July, August, and September. During this timeframe, one of the owners of Formall was attempting to sell his interest in the company, and the company asked the bank to forestall action on the notes. After this deal fell through, the bank sent a registered letter to one of the owners at his vacation home. The letter indicated that unless the entire matter was resolved by October 13, the bank would take legal action. On October 23, the bank declared all three notes to be in default and used the money in Formall's accounts to offset the balance. In January, Formall paid the revolving credit note in full.

Formall then filed suit against the bank, alleging breach of contract and damages resulting from lost earnings, lost use of working capital, lost credit and goodwill, and lost interest on the funds seized by the bank. The bank moved for summary judgment, arguing that the anti-waiver clause barred Formall's claim. The trial court granted summary judgment for the bank, but the Michigan Court of Appeals reversed.

The court noted that other jurisdictions had taken different approaches to the interpretation of an anti-waiver clause. Some construe anti-waiver clauses strictly according to their terms, "thus conclusively precluding a creditor's pattern of accepting late payments from operating as a modification or waiver of the contract's default provisions." *Id*. at 907 (quoting *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 873-74 (10th Cir. 1981)). Others have held that an anti-waiver clause "is itself subject to estoppel given the correct set of facts and that whether the correct set of facts is present is a question for the trier of fact to

decide." *Id*. The court noted that there were facts that favored each party's position, which the court took as an indication that the case should be submitted to a jury. The court found that there was at least one notice that unambiguously stated that the bank intended to accelerate all three notes; however, there were other facts that "may well have lulled Formall into a false sense of security," including the bank's involvement in the potential sale, acceptance of payments after the note was due, and sending the final notice to one of the individual owners rather than the company. *Id*.

The court concluded that there was a genuine issue of material fact, but concluded the opinion with the following caveat:

> [W]e confine our decision to the facts of this case alone. We decline to make a jury question out of every situation where a lender had accepted *any* payments, even though small, or temporarily deferred acceleration, or otherwise forbore or desisted from a strict compliance with the rights of collection. There reasonably must be a threshold below which the "anti-waiver" clause is protection for the bank. Just what that threshold level should be remains to be decided on a case by case basis. Suffice it to say, given the facts of the instant case, the threshold level has been exceeded.

*Id*.

The undisputed evidence in this case indicates that starting in April 2004, every payment was made after the first of the month, and according to the terms of the note, these payments were late. Although the payments were untimely, the Lambrights did make a payment every month for several years, and the payments exceeded the minimum payment. The evidence favorable to the judgment indicates that in April 2005 and again in November 2005, the Lambrights increased their payments at the Lees' request in order to help the Lees meet their increasing medical expenses. There is no indication that the Lees complained

about the late payments or attempted to enforce any of the penalty provisions. In 2010, the Lambrights began experiencing their own financial difficulties, and believing that they had paid well in advance, they reduced their payments to $500 or less. Still, the Lees did not complain, and it was not until over a year later, in March 2011, that Gregory attempted to collect on the note. In sum, the evidence favorable to the judgment shows that for a period of seven years, the Lees accepted late payments, made no attempt to enforce the penalty provisions, and allowed the Lambrights to believe that they were ahead in their payments. This evidence meets, if not exceeds, the bar set by *Formall* for bringing the issue of waiver before a jury.

Gregory does not acknowledge *Formall* at all, but relies solely on the black-letter law from *Burkhardt* and argues that the terms of the note are unambiguous. However, the very holding of *Formall* is that even unambiguous terms can be waived based on a party's conduct.

We conclude that, pursuant to *Formall*, there is a genuine issue of material fact as to whether the lenders waived or partially waived enforcement of the penalty provisions. We express no opinion as to whether waiver has in fact been established. We further note that while the parties appear to have taken an all-or-nothing approach to this issue – the Lambrights arguing that the penalties have been completely waived and Gregory arguing that she can enforce all penalties dating back to the first late payment – *Formall* does not appear to dictate this result, but rather emphasizes that it is a fact-sensitive question. For instance, a jury might reasonably believe that the Lees initially overlooked late payments in order to

induce the Lambrights to make larger payments, but might take a different view of the months when the Lambrights made small payments or none at all.

## Conclusion

We conclude that the Lambrights have waived their argument that the letter sent by Gregory's counsel in March 2011 waives any claim in excess of $72,912.74. However, we agree that the trial court erred by considering Fry's letter and that there is a genuine issue of material fact as to whether the lenders waived or partially waived enforcement of the penalty provisions. Therefore, we reverse the grant of summary judgment and remand for further proceedings.

Reversed and remanded.

ROBB, C.J., and FRIEDLANDER, J., concur.