DAHROOGE *v.* ROCHESTER GERMAN INSURANCE CO.

1. INSURANCE—LIMITATION OF ACTIONS—CONDITIONS OF POLICY.
   An action upon a Michigan standard policy of fire insurance must be brought within a year from the date of the fire. Act No. 277, Pub. Acts 1905 (3 How. Stat. [2d Ed.] § 8328).

2. SAME—ESTOPPEL—PROMISE TO PAY LOSS.
   And the period is not extended by mere assurances that the loss would be paid, offered by defendant's adjuster during negotiations of settlement. Waiver must arise by express agreement, from a new promise to pay or out of part payment or failure to plead.

3. WAIVER—WORDS AND PHRASES.
   A waiver is a voluntary relinquishment of a known right.

4. INSURANCE—ESTOPPEL.
   Where plaintiff, acting under legal advice, entered into

negotiations with defendant's adjuster, and was put off from time to time with assurances that the parties would get together, or that defendant would pay the loss, or not to sue, that the adjuster was busy and would take up the matter later, so that the insured delayed starting legal proceedings until two or three months before the expiration of the year, and where two actions failed or were abated, and service was not secured until four months in excess of the year had elapsed, defendant was not' liable on any theory of estoppel or waiver.

5. LIMITATION OF ACTIONS—FIRE INSURANCE—STATUTES.

3 Comp. Laws, § 9738 (5 How. Stat. [2d Ed.] § 14145), extending the time for commencement of suit one year after failure, abatement, or dismissal of any action instituted within the period of limitations, has no application to a fire insurance policy of standard statutory form.

BIRD, J., dissenting.

Error to Kent; Perkins, J. Submitted October 17, 1912. (Docket No. 124.) Decided November 3, 1913.

Assumpsit by George Dahrooge and Maggie Dah-. rooge against the Rochester-German Fire Insurance Company upon a policy of insurance. Judgment for defendant on a verdict directed by the court. Plaintiffs bring error. Affirmed.

*Powers & Eardley,* for appellants.

*Norris, McPherson & Harrington,* for appellee.

STEERE, C. J. A judgment was rendered against plaintiffs and appellants in this case on a directed verdict, for the reason that the action was not begun until several months had elapsed after the expiration of one year from the time of the fire which it was claimed destroyed property of plaintiffs covered by the policy of insurance upon which suit was brought. Plaintiffs are husband and wife and resided on Wealthy avenue in the city of Grand Rapids, Mich.,

where they also conducted, in a portion of their residence, the business of manufacturing silk garments. They had resided there and been so engaged for nine years previous to the time in question, and had carried insurance with defendant on their property for six or seven years.

On May 19, 1910, a policy for $1,500 was issued to them, through W. H. Van Leeuwen, the agent of defendant, on their building, and its contents while occupied as a dwelling, on Wealthy avenue. This policy bore a mortgage clause making the loss, if any, payable to a named mortgagee, as her interest might appear. In the summer of 1910 plaintiffs desired to make a change in this policy, and the husband, George Dahrooge, visited Mr. Van Leeuwen, the agent, with the policy, requesting him to change it over so as to cover the stock and machinery in the building, informing him fully of the location and value of the property and the condition of the title. The agent made the change, on August 13, 1910, by canceling two riders on the policy, containing a description of building and contents and the mortgage clause, and attaching another rider providing an indemnity, in case of loss, of $200 on sewing machines and fixtures, and $1,300 upon stock and materials connected with their manufacturing business. There was other concurrent insurance on the property, in relation to which no question is raised. A fire occurred on the premises October 14, 1910, about 6 o'clock in the morning, partially consuming the building and totally destroying the stock on hand, also seriously damaging the machinery.

Notice was given at once to the local agent, who visited the property and informed plaintiffs that an adjuster would be sent. Two or three days later a Mr. Bartells, acting as adjuster for defendant, came and looked over the premises, being furnished by plaintiffs with all the information he desired and

given access to books and bills then on hand and which had survived the fire. At his suggestion duplicates of bills lost or destroyed were procured from where the goods were purchased, and produced later when Dahrooge was examined under oath at the instance of defendant in January following. The assured transmitted, with schedule of property claimed to have been destroyed, to defendant, proofs of loss on November 30, 1910. These proofs were made out on a blank defendant had furnished. Assured appears to have been represented by counsel at that time, who, on December 17, 1910, wrote defendant, stating that the proofs of loss and inventory had been mailed to it on November 30th, but receipt had not been acknowledged, asking for a reply; again writing on December 24, 1910, advising of the two previous communications, and noting that they had not yet been favored with the courtesy of a reply, asking acknowledgment of previous communications and information as to what defendant proposed to do. To this, on December 28, 1910, defendant, through its manager, replied:

"The matter to which you refer is in the hands of our Mr. H. A. Bartells, Home Bank Building, Detroit, Michigan."

Another letter of March 6, 1911, acknowledging a letter from said attorneys, of the 2d inst., stated:

"Have passed the matter on to our Mr. H. A. Bartells," etc.

The testimony shows without controversy that the assured, as often as requested, exhibited to the person or persons designated by the defendant the place and remains of any property from the fire, submitted to examination under oath and produced for examination the books and accounts, bills, invoices, and other vouchers, or certified copies thereof, allowing the same to be examined, and any copies or extracts

desired to be made by defendant's representatives. Plaintiffs' testimony was that the cash value of the machinery in the building amounted to $956.90, and the loss thereon $428; the cash value of the stock being $3,263.76, and the loss thereon total, the same being entirely destroyed by fire; making total loss as the result of the fire $3,691.76, the value of the property being given as $4,520.66. This action was begun January 27, 1912, one year three months and thirteen days subsequent to the fire, which occurred October 14, 1910.

Plaintiffs' declaration was upon their policy, in proper form under Circuit Court Rule 3 *(c)*. Defendant pleaded the general issue, adding to such plea a special notice, under Circuit Court Rule 7 *(d)*, of various breaches of conditions, stipulations, etc., contained in the policy, and that action was not commenced within the statutory period after date of the fire alleged in plaintiffs' declaration. As the case is presented only the last feature of said notice demands attention.

On the trial defendant introduced no testimony, and, after plaintiffs rested their case, moved the court to direct a verdict in its favor, for the reason that it appeared from the undisputed evidence that the action was not commenced within 12 months next after the fire. This motion was granted.

A subsequent motion of plaintiffs for a new trial was denied, for reasons already stated by the judge to the jury in his charge when directing a verdict for defendant, the pertinent parts of said charge being as follows:

"The statute expressly provides that suit shall be brought within 12 months from the time of the fire. The only way in which that statute can be abrogated would be by showing that the company had done something, or was responsible for some act, which led the plaintiffs into the belief that their claims

would ultimately be paid—some act upon which the plaintiffs had a right to rely, and upon which they did rely, thereby creating an estoppel against the defendant company on account of the delay. I fail to see from the evidence anything which prevented the plaintiffs from bringing their action within the 12 months, so far as the defendant company is concerned. In fact they did bring their action within the 12 months; they brought two suits, both of which failed on account of defects which are unnecessary to be mentioned at this time. * * * Those cases failed, and some months after the expiration of the year they brought this suit, and now claim that the company is estopped from raising this defense or from making this defense under the statute by reason of its conduct; that they were led to believe * *· * that their claim would be paid, by the action of the company or its agents, and that they relied upon the promises and statement of the agent of the company, and waited until the year had expired before they commenced their suit; that position is inconsistent with the admitted facts in the case. * * * I think the statute is a salutary one, and that the court is bound to obey it. * * * The equities of the case are not for the court at this time. It is a legal proposition, pure and simple, as to whether or not their action was commenced within the statutory period. Clearly it was not."

Plaintiffs contend that the court erred in its conclusions for two reasons, summarized as follows:

"That the 12 months in which suit must be started had not expired at time present suit was started; and, even though it had expired, the time was extended by defendant's conduct and dealings with plaintiffs."

The policy involved in this case is a Michigan standard fire insurance policy of the form prescribed by Act No. 277, Pub. Acts 1905 (3 How. Stat. [2d Ed.] § 8328). The use of this form was compulsory upon the parties in effecting the insurance. It requires that immediate notice of the fire shall be given, and proof of loss furnished within 60 days; that insured, as often as required, shall submit to examina-

tion under oath by any person named by the company, and shall produce all books of account, bills, invoices, etc., and that "the loss shall not become payable until 60 days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company," etc., and that "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months next after the fire."

It is contended by plaintiffs that the period of 12 months in which the action must be brought only begins to run from the time in which the cause of action accrues, which would be, at the earliest, 60 days from the time of full compliance with the requirements mentioned; that though they acted promptly in all particulars and complied with all requests and demands of defendant, they had no right of action until 60 days after January, 1911, being the time when, at the request of defendant, Dahrooge submitted to examination under oath. Numerous authorities are cited from various jurisdictions in support of this contention. Many of them involve policies purely contractual, containing similar provisions to those in our standard policy, but voluntarily prepared and adopted by the insurance companies for their own protection. Even in that class of cases there is conflict, though it may be conceded the majority of decisions tend to sustain plaintiffs' contention. Where there are Michigan decisions on the subject we need look no further.

In *Barry & Finan Lumber Co.* v. *Insurance Co.*, 136 Mich. 42 (98 N. W. 761), it is said of a policy containing a similar limitation to the present one:

"It is settled that, under a provision like the one in this policy, a plaintiff cannot ordinarily recover, unless his action is begun within 12 months" (citing

nine Michigan cases, amongst which are *Law* v. *Accident Ass'n,* 94 Mich. 266 [53 N. W. 1104], which contained identically the same provision relative to time of bringing suit found in our standard policy).

In that case negotiations and attempts to settle were conducted for between six and seven months, leaving but a little over five months within which suit could have been brought before the 12 months expired. The action, however, was not brought until upwards of 14 months had expired. The question of waiver was raised, but the court held that nothing was done by defendant which could be construed as a waiver of this substantial right expressed in the policy; that the suit should have been brought within the year specified, and, not having done so, plaintiff lost his right of action. Also, *Lentz* v. *Insurance Co.,* 96 Mich. 445 (55 N. W. 993), involving a policy limiting the time when suit could be brought to six months. A fire occurred on October 23, 1889. Action was begun May 5, 1890—six months and twelve days after the fire. The court held that this delay operated to bar recovery unless excused by act of the company. It is stated that on the 22d of December, 1889, defendant's agent informed plaintiff that the company denied any liability. The court, speaking through Justice MONTGOMERY, said:

"He now treats the repudiation of liability as excusing him from furnishing any proofs of loss, and justifying an action on the policy. Assuming that he is right in this contention, it unfortunately demonstrates that he was not delayed in bringing suit by the negotiations. Had he furnished proofs of loss the day the fire occurred, the company would have been entitled to 60 days within which to make payment, by the terms of the policy. He could not, therefore, have brought suit earlier than December 22d. He now brings suit without furnishing proofs of loss, on the claim that the company's refusal to pay waived

such proofs. This he was entitled to do on December 22, the earliest day at which he could have brought suit had he furnished proofs."

One of the strongest cases cited and relied upon by plaintiffs is *Steen* v. *Insurance Co.*, 89 N. Y. 315 (42 Am. Rep. 297), which was decided before adoption of a standard policy in the State of New York. That case is fully in harmony with plaintiffs' contention here, holding that the limitation should be construed as running from the time when the loss becomes due and payable, and not from the time of the fire, and refers with disapproval to Massachusetts and Illinois decisions holding that the time begins to run when the fire occurs. Subsequent to the adoption of a standard policy in the State of New York the same court, in the case of *Hamilton* v. *Insurance Co.*, 156 N. Y. 327 (50 N. E. 863, 42 L. R. A. 485), passing upon a similar clause in a standard policy, said:

"The policy in this case was a standard fire insurance policy, * * * and was issued under and in pursuance of a statute, * * * . The only policy the defendant had a right to issue was that authorized by that statute, and the policy in suit contained only such provisions, agreements, and conditions as were specially authorized and required by it. The provision limiting the time within which an action thereon should be commenced to the period of one year, was inserted in obedience to the statute. * * * Therefore, it is manifest that the statute specially prescribes the limitation of time within which an action upon a fire insurance policy upon property in this State shall be commenced. * * * It was not, however, made a part of the policy by virtue of any agreement of the parties, but by the command of the statute. * * * The law establishes the period of limitation, and forbids the parties from disregarding it."

In that case the fire occurred January 16, 1892. Summons was issued and put in the sheriff's hands January 14, 1893, but he failed to serve it until the

17th, which was held to be too late. Our present standard policy is copied from that of New York. The policy there under consideration contained exactly the same provisions and requirements, that loss shall not be payable until 60 days after notice, ascertainment, estimate, proof of loss, etc., upon which plaintiffs rely here to extend the time for bringing action beyond the 12 months. Standard policies similar to that before us have been adopted, and their use made compulsory by statute in many States. It has been repeatedly held, in passing on their various provisions, that they should be construed according to the plain meaning of the language used, and that the trend of authority is towards enforcing the legislative command when clearly expressed, rather than to nullify and modify by strained constructions. The provision that an action cannot be sustained "unless commenced within twelve months next after the fire" is very plain, clear, and simple language. If it was the legislative intent that this should have other than the natural meaning, it would have been a simple matter to have so provided. In Richards on Insurance Law (3d Ed.), § 327, it is said:

"By the better authority the period of limitation begins to run, under the standard policy, from the date of the fire, as specifically stated" (citing many cases).

It is further contended in plaintiffs' behalf that the time for bringing action was extended by waiver, or estoppel, arising from negotiations for settlement, extending from the date of the fire in October until the following July, during which time defendant's adjuster gave repeated assurances that the loss would be paid. It has been said that a waiver must arise either by express agreement, a new promise to pay, a part payment, or a failure to plead. A waiver is

a voluntary relinquishment of a known right. Estoppel is based on some misleading conduct or language of one person which, being relied on, operates to the prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud. The claim of plaintiffs in this case seems rather to suggest an estoppel, though in insurance cases the terms are freely used interchangeably, and it is sometimes expressed as waiver by estoppel.

So far as the record discloses in this case defendant required no further proof of loss, production of papers, arbitration, or other proceedings under the policy which might operate to delay, after the examination of Dahrooge under oath in January, 1911. From that time plaintiffs were legally at liberty to begin an action whenever they saw fit. They had, however, been advised that the matter was in the hands of Mr. Bartells, the adjuster, and were negotiating with him for a settlement. Though the details are not given, it seems evident that there was some matter in difference between them, for Dahrooge testifies: That the next time he saw Bartells after the examination under oath, in January, was in February, and he then talked of a compromise; "said we would get together soon, that he was busy just at that time." That he thought he saw him again in March or April, when Dahrooge with his attorney met Bartells on the street, and they walked and talked together. That he then said:

"We will get together, Mr. Dahrooge; I am busy now, and I will be back in a few days."

That in reply to the statement that they would wait no longer, but would sue, he said:

"Don't sue, we will get together and settle it up."

That he again saw Bartells in June or July, and said:

"You are delaying so long; I am going to sue you" —to which Bartells replied: "I will tell you, Mr. Dahrooge, my friend is sick in Detroit, and I cannot bother; you better go in and see the attorneys, Mr. McPherson and Mr. Norris, and they will fix you up. * * *

"*Q.* What, if anything, did he say about whether it was necessary to sue the company or not?

"*A.* He did not say; he said: 'You go over there and they will fix you up, Mr. Dahrooge.' He said: 'Don't sue; I am busy, and I will be back again. You go and see Mr. Norris; he has it now, and I think he will fix it up with you.' That was some time in July, but I cannot remember the exact date in July."

Witness further testified that he later, in July, visited one of the attorneys to whom Bartells referred him, and told him he was going to sue the company if they did not settle; that the attorney asked what kind of a proposition witness wanted to make to the company, to which he replied, "The full amount;" that the attorney offered him "something," which was not accepted; that in reply to the threat to start suit the attorney said, "That is up to you if you want to wait until Bartells comes back," and witness then said, "I waited long enough.    *    *    *    I ain't going to wait," after which he started suit. Plaintiffs' testimony on that subject, taken as a whole, can be said to show that up to this time they delayed action through hope and expectation of a settlement, encouraged by assurances of defendant's adjuster, but who, at the last interview with him, when approached with a demand for settlement, said he could not bother, and referred them to the defendant's attorneys; that an interview with one of said attorneys resulted in an offer of "something," which was refused, with the declaration that suit would be brought. That was some time in July. The year did not expire until the following October. The first suit was brought in August; a second was started before the year had expired, and this suit was begun 16

months after the fire. The first and second failed, when or why is not disclosed in the record, beyond the statement of counsel for defendant in open court that service in the second was defective, and "that suit was quashed" and this third action was begun January 27, 1912.

Irrespective of the question of whether the adjuster of defendant could orally waive the statute of limitations provided in a standard policy, or by estoppel *in pais* bar defendant from pleading and relying on such statute, we are unable to find that the negotiations with the adjuster and attorney, taking any assurances or promises testified to have been made by them in their strongest light, amount, under the undisputed facts in this case, to a waiver or estoppel. No promises or assurances in writing were ever made by defendant. To plaintiffs' urgent demands, made through their attorneys, they were informed that the matter was in the hands of the adjuster. Negotiations with him began with a demand of payment and a proposal from him to "compromise," and ended by referring plaintiffs to attorneys, one of whom made an offer which was refused. Then all negotiations ended, over two months before the 12-month limitation had expired. During all this time plaintiffs had legal counsel and cannot plead ignorance of their rights. It has been frequently held that mere negotiations for an adjustment are not a waiver of limitations, especially where they do not cause delay beyond the period in which action may be brought. *McFarland & Steele* v. *Insurance Co.*, 6 W. Va. 425; *Vincent* v. *Life Ass'n*, 74 Conn. 684 (51 Atl. 1066); *Carlson* v. *Insurance Co.*, 172 Mass. 142 (51 N. E. 525); *Allen* v. *Insurance Co.*, 95 App. Div. (N. Y.), 86 (88 N. Y. Supp. 530); *Morrill & Co.* v. *Insurance Co.*, 71 Vt. 281 (44 Atl. 358); *Blanks* v. *Insurance Co.*, 36 La. Ann. 599.

In the last-mentioned case the policy contained a

stipulation limiting the time in which claims could be prosecuted to one year following the loss. Negotiations were had in which promises to make payment on certain conditions were claimed to have been made. It was claimed that these conditions were fulfilled, after which defendants neglected or refused to pay. Several months were consumed in these negotiations. The court said:

"But here, even conceding that the negotiations were entitled to any effect whatever, they ceased, as conclusively proved, about two months before the expiration of the limitation. The mere pendency of the negotiations between the parties on subject of settlement will not of themselves operate as a waiver of the limitation, unless they are of a character to induce the insured to abstain from suit within the time."

Though it may be conceded that some of our decisions appear to view this question from a somewhat different angle, we think that the above rule of law is borne out by reason and abundant authority, and is in harmony with the principles laid down in *Shackett* v. *Benefit Society,* 107 Mich. 65 (64 N. W. 875) ; *Law* v. *Accident Ass'n, supra,* and *Lentz* v. *Insurance Co., supra.*

It has been suggested in consultation that section 9738, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14145), may have some application here. The section provides, in cases where an action has been begun within the time limited in the same chapter and failed for specified reasons, that the time for commencing an action is extended for one year from abatement of the original suit. The saving provisions of that section relate to the limitations specified in the chapter of which the sections form a part, and have no application to cases barred under Act No. 277, Pub. Acts 1905 (3 How. Stat. [2d Ed.] § 8328). *Wilton* v. *City of Detroit,* 138 Mich. 67 (100 N. W. 1020). It is to be inferred that such was the view of counsel in this

case. While the question of the statute of limitations, on the one side, and waiver, on the other side, are raised, urged, and exhaustively argued pro and con by counsel in their respective briefs, no reference is made to said section 9738, nor has there been any suggestion by counsel on either side that they consider it pertinent, or desire the court to pass upon it. This court has so often said that questions not raised by the record, and argued in the briefs, cannot be considered that to cite authority would be superfluous. Furthermore, if we were of opinion that it was a proposition material to a decision here, the case could not be decided upon such point until both counsel have been notified and given an opportunity to argue the same before this court. Section 193, 1 Comp. Laws (4 How. Stat. [2d Ed.] § 11690).

Since the foregoing opinion was written counsel of record were invited to furnish briefs, if they so desired, relative to the applicability of the statute last referred to. Carefully prepared briefs from both sides have recently been received. We are still of the opinion that the bill of exceptions upon which the case was heard does not properly present that question, and also that said section 9738, which was enacted prior to 1857, does not apply to this special statute of limitations relative to fire insurance policies, enacted in 1905.

For the foregoing reasons we are constrained to hold that the conclusions reached by the trial court are well founded, and its judgment is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, and OSTRANDER, JJ., concurred with STEERE, C. J.

BIRD, J. *(dissenting)*. I am unable to agree with the conclusion of Mr. Justice STEERE that this case should be affirmed. I think it is saved from forfeiture by the statute. The first suit on this cause of action was begun on August 25, 1911. For some

reason which is not disclosed, it was dismissed. The second suit was begun within the year limited in the policy, and was subsequently and after the year had expired dismissed on account of defective service of process. The present suit was begun January 27, 1912, within one year after the second suit had failed for want of proper service. This state of facts brings the case, in my opinion, within the saving statute, section 9738, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14135), which reads as follows:

"If, in any action, duly commenced within the time limited in this chapter, and allowed therefor, the writ or declaration shall fail of a sufficient service or return, by any unavoidable accident, or by any default or neglect of the officer to whom it is committed * * * the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after the reversal of the judgment therein."

Section 9728 of the chapter to which the foregoing section refers, provides that "all actions of assumpsit, or upon the case, founded upon any contract or liability, express or implied," shall be commenced within six years after the cause of action shall accrue, and not afterwards. Had not the standard policy been enacted by Act No. 277 of the Public Acts of 1905, the plaintiffs would now clearly have the right to commence their action any time within six years from the date when the policy was payable. The act amended, by implication, section 9728, and reduced the time in which suit might be commenced on standard fire insurance policies from six years to one year. The foregoing statute should now be read in connection with Act No. 277, and construed together as one law. 36 Cyc. p. 1164; *Conrad* v. *Nall*, 24 Mich. 275; *People, ex rel. Attorney General*, v. *Railroad Co.*, 145 Mich. 140 (108 N. W. 772); *Dennison* v. *Allen*, 106 Mich. 295 (64 N. W. 38). If we follow this rule of

construction and read section 9728 in connection with the amendment, that section would then read:

"All actions of assumpsit, or upon the case, founded upon any contract or liability, express or implied, shall be commenced within six years after the cause of action shall accrue, and not afterwards, *provided that all actions upon the standard fire insurance policy shall be commenced within twelve months next after the fire.*"

While Act No. 277 of the Public Acts of 1905 clearly indicates an intention to shorten the period within which actions on the standard policy may be commenced, it nowhere indicates an intention to withdraw such actions from the protection of the saving statute. The case of *Wilton* v. *City of Detroit,* cited, does not apply because that case dealt with a local law, while Act No. 277, Pub. Acts 1905, involved in this case, is a general law.

The suit having been commenced within the year of grace allowed by the statute, I am of the opinion that it is thereby saved from forfeiture, and that the judgment should be reversed and a new trial granted.