NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0367n.06
Filed: May 9, 2005

No. 03-2016

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Western |
| | ) | District of Michigan |
| RANDY and TAMMY APPLETON, | ) | |
| *Defendants-Appellants*. | ) | |

_____/

Before: CLAY and GILMAN, Circuit Judges; and O'MALLEY, District Judge.[*]

*O'MALLEY, J.* Westfield Insurance Company ("Westfield") filed this lawsuit against its insureds, Randy and Tammy Appleton ("Appletons"), seeking a declaration that it is not liable under the Appletons' homeowners insurance policy. In response, the Appletons filed counterclaims against Westfield. In due course, Westfield filed a motion for summary judgment, which the district court granted. The court also dismissed with prejudice the Appletons' counterclaims. The court later denied the Appletons' motion to reconsider its grant of summary judgment to Westfield. The Appletons, thereafter, timely filed this appeal. For the reasons outlined more fully below, we **AFFIRM** the district court's grant of summary judgment in favor of Westfield and the district court's dismissal "with prejudice" of the Appletons' counterclaims.

_____

[*]  The Honorable Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are as follows.  Westfield issued a homeowners insurance policy to Randy Appleton for the property located at 33273 East Palmer Lake Road in Colon, Michigan.[1] Generally, the policy insured against loss of the Appletons' real property, as well as the personal items within their home.  The policy contained a "Duty After Loss" provision requiring the Appletons to submit a proof of loss statement within sixty days after any claimed loss.  The policy further provided that, if the insureds failed timely to submit a proof of loss statement, the subject claim would be invalidated unless they proved it was "not reasonably possible" to timely submit the proof of loss statement.

On the morning of December 13, 2001, a fire destroyed the Appletons' home.  The next day, with the Appletons' permission, Westfield's fire investigator, Ken Shelley, together with a Michigan State Police Fire Marshal, examined the fire-damaged premises.  After completing their investigation that evening, Shelley and the Fire Marshal informed the Appletons that they could do as they wished with the premises.  Thereafter, the Appletons demolished the dwelling with the intent to rebuild.

On January 11, 2002, Westfield's insurance adjuster, Scott Whaley, requested by letter a proof of loss statement and supporting documentation from the Appletons. The letter included three blank proof of loss statement forms (along with instructions on how to complete the forms) and established a March 12, 2002 deadline for completing and returning the forms (i.e., sixty days later per the policy's terms).  The letter went on to state that failure to meet the March 12, 2002 deadline

---

[1]  Though the policy's cover sheet indicates that the policy was prepared for "Randy Appleton," its use of the term "insured," in this case, applies with equal force to both Randy and Tammy Appleton as "insureds."  *See* Definitions Section.

would mean that Westfield would not honor the Appletons' claim. Whaley then made two appointments to help the Appletons complete the forms, but never conditioned the Appletons' obligation to complete the forms on his assistance. Due to scheduling conflicts, Whaley had to cancel both appointments and ultimately never met with the Appletons.

In early February, the Appletons sought legal representation. On February 12, 2002, Mike Grenon, a special fire investigator for Westfield, met the Appletons at their attorney's office and took recorded statements regarding the fire. The statements, however, were not "under oath." At that meeting, Grenon told the Appletons that they also needed to submit personal property inventories. Upon learning that the Appletons were represented, on February 13, 2002, Whaley informed the Appletons' attorney by letter that he would no longer contact the Appletons directly. In his letter, Whaley specifically referenced his January 11, 2002 letter and reiterated the Appletons' obligation to submit a sworn proof of loss statement.

On March 6, 2002, the Appletons submitted the personal property inventories that Grenon had requested at the February 12, 2002 meeting, and asked when Westfield would make its final decision on their claim. At that time, however, they did not provide the required proof of loss statement. By letter dated March 7, 2002, Grenon followed up with the Appletons regarding their property inventories and requested that they submit additional information including: 1) tax returns and financial statements; 2) cell phone records; 3) airline ticket records; 4) their parents' contact information; and 5) "mortgage loan" information. On April 3, 2002, the Appletons submitted the additional items that Grenon requested, and, through their attorney, again inquired as to when Westfield would make its decision on their claim.

In an April 24, 2002 letter, Grenon acknowledged that he had received the Appletons'

3

supplemental documentation relative to their property inventories, but never acknowledged their inquiry regarding Westfield's consideration of their claim. The Appletons never provided Westfield with an executed sworn proof of loss statement *prior to the March 12, 2002 deadline* as 1) required by their policy, and 2) requested in Whaley's January 11 and 13, 2002 letters to the Appletons and their attorney. Accordingly, Westfield denied the Appletons' claim.

Rather than simply telling the Appletons of its intent to deny their claim, on April 30, 2002, Westfield filed this action. In its complaint, Westfield sought a declaratory judgment that it had no coverage obligation to the Appletons because they had failed to timely file a proof of loss statement, as required by their insurance policy and the notices provided to them by Westfield.

The Appletons responded in two ways. First, they submitted a sworn proof of loss statement to Westfield on May 15, 2002. By letter dated June 14, 2002, however, Westfield rejected the Appletons' proof of loss statement because it: 1) was untimely; 2) was not signed by Tammy Appleton; and 3) "merely estimate[d] the cash value, whole loss and damage and amount claimed, [without support] by adequate documentation or information." Second, the Appletons answered Westfield's complaint, and asserted that Westfield had waived, or was otherwise estopped from enforcing, strict compliance of the policy's sixty-day "proof of loss" requirement. The Appletons also filed counterclaims against Westfield for breach of contract and unfair trade practices in violation of Michigan law.

Westfield ultimately moved for summary judgment on all of its claims. Finding no genuine issues of material fact, the district court granted Westfield's motion and, thereafter, dismissed the Appletons' counterclaims with prejudice as having no legal basis in light of the court's grant of summary judgment to Westfield. The Appletons filed a motion for reconsideration, which the

4

district court considered and denied.[2]  The Appletons timely filed this appeal.

## II.  DISCUSSION

Michigan law, which the parties agree applies in this case, strongly favors insurance companies in connection with insurance policies that contain the somewhat standard "proof of loss" requirement – usually sixty days after a claimed loss.  *See Dellar v. Frankenmuth Mut. Ins. Co.*, 433 N.W.2d 380, 383 (Mich. Ct. App. 1987) ("Clearly, the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure.").  This is, of course, the *general* issue in this appeal – whether the Appletons' failure timely to submit a proof of loss statement, as required by their insurance policy, is fatal to their coverage claim.

Michigan law recognizes limited exceptions to this seemingly harsh rule: 1) waiver and/or estoppel based on an insurer's conduct; and 2) substantial compliance with a policy's terms by an insured.  The Appletons argue that both exceptions apply and afford them coverage under their insurance contract with Westfield.  They alternatively argue that, at the very least, genuine issues of material fact exist such that a jury should determine whether either, or both, of these exceptions apply in this case.  Finally, the Appletons argue that, regardless of the foregoing, the district court's dismissal of their counterclaims with prejudice was inappropriate.  We address each of these arguments in turn below, and find that, though we are sympathetic to the Appletons' circumstances, none of their arguments merit reversal of the district court's decision.

**A.**     **Standard of Review**.

---

[2]     The district court construed the Appletons' motion for reconsideration as a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e).

5

This Court reviews a district court's grant of summary judgment *de novo*. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004); *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, this Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

A federal court sitting in diversity must apply the forum state's law in accordance with the pronouncements of the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76-79 (1938); *AllState Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citing *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir 1995)). If the state's highest court has not addressed the issue, then the federal court may consider decisions from the state appellate courts, but only to the extent those decisions reflect the likely outcome were the state's highest court to decide the issue. *See Allstate Ins. Co.*, 249 F.3d at 454. As noted, the parties agree that Michigan law applies in this case.

**B.      No Genuine Issues of Material Fact Exist**.

We first address the Appletons' catch-all alternative argument that genuine issues of material fact exist as to each exception such that the district court's grant of summary judgment to Westfield was inappropriate. There is no dispute at all in this case regarding the material facts, however.

The Appletons couch each of their *legal* arguments against the need for strict compliance

6

with the sixty-day "proof of loss" deadline as being based on arguably disputable facts. For example, they argue that Whaley's failure to actually help the Appletons fill out the proof of loss forms, as he promised, presents a factual issue as to whether Westfield waived, or should be estopped from enforcing, the sixty-day deadline. Similarly, they argue that the question of whether they "substantially complied" with the policy's proof of loss requirement by providing much, but not all, of the information Westfield requested (e.g., personal property inventories and supplemental information related thereto), and submitting a proof of loss statement almost immediately after Westfield filed this action, is a factual issue to be determined jury. We disagree.

The Appletons identify legal issues, but not disputed facts that bear on those issues. In other words, they dispute the district court's legal conclusions regarding what the undisputed facts mean. The record is clear as to the material events that occurred relative to the Appletons' insurance claim in this case. Simply, the Appletons do not dispute that: 1) on various occasions they or their attorney discussed their claim with Westfield representatives; 2) they received multiple letters from Westfield regarding their obligations under the policy; 3) though Whaley made two appointments to help the Appletons complete the proof of loss forms, he later canceled both appointments due to scheduling conflicts, and, thereafter, informed the Appletons that he would not have further direct contact with them because they were represented by counsel; and 4) they failed timely to comply with the sixty-day proof of loss statement requirement.

Whether Westfield waived, or is otherwise estopped from strictly enforcing the "proof of loss" requirement in light of these facts is a purely legal question, as is the question of whether the Appletons "substantially complied" with the policy under Michigan law. Accordingly, we analyze each of the Appletons' arguments to determine whether one or both of them prompt us to disagree

7

with the district court's decision.

**C.    Westfield Neither Waived, Nor Is Estopped From Enforcing, The Sixty-Day "Proof Of Loss" Requirement.**

Generally, an insurer may waive a proof of loss requirement in a policy with its insured. 17A APPLEMAN & APPLEMAN, INSURANCE LAW & PRACTICE § 9741 (1970). An insurer who furnishes a proof of loss statement to its insured after an accident does not waive the proof of loss requirement in its policy by subsequently denying, in writing, an insured's claim that was untimely brought under the terms of the policy. *Id.* § 9784. In addition, "a claim of waiver or estoppel must be specifically pled and verified." 3D COUCH ON INSURANCE § 194.16 (Lee R. Russ & Thomas F. Segalla, eds., 1999) [hereinafter "COUCH"]; *cf. City of Pigeon Forge v. Midland*, 788 F.2d 368 (6th Cir. 1986) (applying Tennessee law). "A waiver is a voluntary relinquishment of a known right. Estoppel is based on some misleading conduct or language of one person which, being relied on, operates to the prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud." *Dahrooge v. Rochester-German Ins. Co.*, 143 N.W. 608, 611 (Mich. 1913).

It has long been the practice under Michigan law that an insured has the burden of proving that the insurer waived the policy provision requiring a proof of loss statement. *Helmer v. Dearborn Nat'l Ins. Co.*, 30 N.W.2d 399, 402 (Mich. 1948) (citing *Struble v. Nat'l Liberty Ins. Co.*, 233 N.W. 417, 418 (Mich. 1930)). Further, the "question of whether there has been a waiver of the requirement of . . . proof of loss <u>is a question of law</u> where the material facts are not disputed, or where the evidence is insufficient to go to the jury." COUCH, § 194.20 (emphasis added). An insurer may impliedly waive the "proof of loss" requirement in its policy if its conduct could <u>reasonably</u> create a belief in an insured's mind that proof of the loss is unnecessary. *Id.* § 194.21.

8

The purpose of requiring "proof of loss statements" from insureds is to protect insurers against fraudulent, excessive, or invalid claims by allowing the insurer to investigate an insured's claims. *See Wendel v. Swanberg*, 185 N.W.2d 348, 352 (Mich. 1971). They are not, therefore, meaningless hoops through which insureds must jump to sustain their claims.

In this case, the Appletons argue that waiver and/or estoppel prevent Westfield from denying them coverage for two reasons. First, they argue that Westfield forfeited its right to strictly enforce the policy's sixty-day deadline because its adjuster, Scott Whaley, promised to help them complete the required proof of loss forms, and failed to do so. Second, they argue that Westfield forfeited its right to strictly enforce the policy's deadline because, near the end of the sixty-day period, Westfield continued to request information from them, thereby "misdirecting" their attention away from the proof of loss obligation. For the reasons outlined below, neither of these arguments prevails.

1. **Whaley's Unfulfilled Promise To Help The Appletons Complete The "Proof Of Loss" Forms Does Not Operate As A Waiver.**

With regard to waiver, the Appletons argue, as they did to the district court, that *Compton v. Michigan Millers Mutual Insurance Co.*, 389 N.W.2d 111 (Mich. Ct. App. 1986), provides precedent for their contention that Whaley's failure to provide promised assistance either operates as a waiver, or creates a genuine issue of material fact as to whether a waiver resulted. The district court determined, however, that *Compton* is factually distinguishable, and we agree.

In *Compton*, the plaintiffs' home was completely razed by a fire. The plaintiffs filed a claim with their insurer, who then prepared a proof of loss statement in the amount of $8,450. Claiming that their loss amounted to $18,000, the plaintiffs rejected the insurer's statement. Because the insurer did not furnish the required forms within the sixty-day "proof of loss" period after the fire, the plaintiffs argued that it should be equitably estopped from denying coverage based on the

9

plaintiffs' failure to timely submit the proof of loss statement, as required by the policy. *Id.* Because the insurer informed the plaintiffs that it would investigate the fire and prepare the proof of loss statement, the Michigan Court of Appeals reasoned that "[i]f plaintiffs were unable to obtain blank forms[,] or if [the insurer] refused to prepare one in the claimed amount of $18,000, then [the insurer] should be estopped from claiming expiration of the 60-day period [as a defense]." *Id.* at 114.

Here, the district court concluded that *Compton* is distinguishable from this case because Westfield timely provided the Appletons with blank proof of loss statement forms, and never promised to unilaterally prepare the forms. The Appletons suggest, however, that Whaley's offer "to help" is akin to the insurers promise in *Compton* "to prepare." Notwithstanding the fact that such a comparison is facially a stretch, unlike the Appletons, the plaintiffs in *Compton* simply could not comply with the policy's proof of loss requirement because the insurer essentially withheld the necessary forms. Westfield, however, provided the Appletons with the necessary forms along with instructions and a clear, unambiguous deadline for completion. That deadline was reiterated to the Appletons' counsel, moreover, well before it expired. As is evident from their unassisted completion of the forms on May 15, 2002, the Appletons cannot base their waiver argument on an inability to complete and timely submit the forms.

The Appletons simply cannot argue that Westfield prevented them from completing the forms, as was the case in *Compton* and *Dellar, supra*, 433 N.W.2d 380, another case on which the Appletons rely. At best, they can argue that completing the forms was simply more difficult without Whaley's help. To argue that Whaley's unfulfilled promise – which was necessarily "withdrawn" when he was informed that the Appletons were represented by counsel – relieved the Appletons of

10

any reporting obligations whatsoever is unsupported by applicable case law. Neither Whaley's offer to help, nor Westfield's initial January 11, 2002 letter, conditioned the Appletons' contractual obligations in any way. Instead, their obligations remained in effect, as repeatedly noted in correspondence to them and their attorney.

Though limited exceptions exist, it remains the general rule under Michigan law (admittedly unlike in many other states) that "the failure to file a signed and sworn proof of loss within sixty days bars recovery on a claim without regard to whether the insurer is prejudiced by such failure." *Dellar*, 433 N.W.2d at 383 (citing *Reynolds v. Allstate Ins. Co.*, 332 N.W.2d 583 (Mich. Ct. App. 1983)). Because waiver based on undisputed facts is a legal issue, and because the Appletons' argument that Whaley's unfulfilled promise to help them complete the forms is an unreasonable basis for ignoring a known and unequivocal obligation, we cannot conclude that Westfield waived, and/or is estopped from enforcing, strict compliance with the sixty-day proof of loss requirement in its policy with the Appletons. Accordingly, we affirm the district court's grant of summary judgment on this ground.

### 2. Westfield's Continued Requests For Additional Information.

The Appletons also briefly argue, without citing any supporting legal authority, that Westfield's continual request for additional information, and particularly Grenon's request for supplemental information (i.e., tax returns, phone records, etc.) shortly before the expiration of the sixty-day deadline, should be considered as an additional factor in determining whether waiver and/or estoppel prevents Westfield from strictly enforcing the sixty-day proof of loss deadline. In response, Westfield asserts that 1) all of its correspondence and requests comported with, or was required by, Michigan insurance law; and, moreover, 2) the Appletons' policy, pursuant to

11

Michigan law, required all waivers to be in writing.

It is not surprising that an insurer might continue to seek information from its insured relative to a pending claim before, during or after a "proof of loss" deadline. An insured's provision of a proof of loss statement does not necessarily mark the end of an insurer's investigation; rather, it simply assists the insurer in identifying the nature of the loss and preventing fraud by forcing the insured to commit to a position within a reasonable time after a claimed loss. Accordingly, the Appletons "misdirection" argument, if adopted, would likely apply in most cases. The Appletons fail to cite any legal authority prohibiting an insurer from continuing to request information as Westfield did in this case. Indeed, courts have held to the contrary. *See Pieces of 8, Inc. v. Ins. By Burley Agency, Inc.*, No. 233904 2002 WL 31447078 at *3 (Mich Ct. App. Nov. 1, 2002) ("That [an insurer's representative] also sought to take statements from the insureds past the time period in which a sworn statement in proof of loss was required to be filed similarly provides no basis for concluding that [the insurer] waived its right to enforce strict compliance with the proof-of-loss deadline.").

Under the circumstances, and especially in light of the fact that no written waiver exists in this case, we can not find that Westfield's ongoing requests for information were unreasonable, much less intended to "misdirect" the Appletons' attention from a known obligation. Accordingly, we must affirm the district court's grant of summary judgment in favor of Westfield on this ground.

**D.      Substantial Compliance Is Not A Viable Defense For The Appletons.**

The Appletons further argue that, because they submitted what they characterize as "voluminous information" in support of their claim, including personal property inventories and unsworn recorded statements, they "substantially complied" with the public policy underlying proof

12

of loss statements, and, therefore, Westfield should not be allowed to strictly enforce the sixty-day deadline to avoid a coverage obligation. Michigan follows the "substantial performance" rule in connection with conditions precedent in insurance contracts. *See Gibson v. Group Ins. Co.*, 369 N.W.2d 484, 486 (Mich. 1985). The doctrine of "substantial compliance," or "substantial performance," generally arises when a change of beneficiary designation is made in a life insurance policy and the settlor of the policy fails to submit the revised policy to the insurer before the settlor's death. *See* 44A AM. JUR.2D *Insurance* § 1712 (2003). Of course, the rule is not limited to that specific factual scenario. It is also a general principle that "[p]olicy provisions making the furnishing of proof of loss within a stipulated time a condition precedent to liability on the part of the insurer . . . will ordinarily be given effect if a <u>satisfactory excuse</u> for the noncompliance or the delay in compliance <u>is not given</u>." *Id*. § 1323 (emphasis added).

The policy objectives underlying sworn "proof of loss" statements include: "(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud." *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich. 2001) (citing *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985)). The *Wineholt* court explained that substantial compliance requires "more than a minimal effort" and the insured must make a "reasonable effort to provide information reasonably within its possession and with a sufficient degree of particularity to allow the insurer to make an informed review of the claim." *Wineholt*, 179 F. Supp. 2d at 752 (citation omitted).

Because the Appletons' failed to complete and timely submit readily available sworn proof of loss statement forms, we find that they did not make a "reasonable effort" to provide Westfield with all the information "reasonably within [their] possession." It is true that the Appletons

13

complied with Westfield's request that they submit personal property inventories, tax returns, cellular phone bills, mortgage documents, and bank account statements. Under the circumstances, however, and considering that they ultimately submitted their proof of loss statement on May 15, 2002 – two months late – the Appletons' failure to comply with the most important part of their known obligations, without the benefit of a *legally* satisfactory excuse, must operate to their detriment.

The Appletons' provision of the various items outlined above fails to alleviate the central policy objective of the proof of loss statement – to avoid fraud. While Westfield may have requested those items to assist in a fraud investigation, without a sworn statement from the Appletons, Westfield, much like the insurer in *Barnes supra* would have no sworn statement with which to bind the Appletons and protect itself against potential fraud.

Though the Appletons accurately note that *Barnes v. State Farm Fire & Casualty Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985), articulates the policy objectives underlying the need for proof of loss statements, they seem to ignore the relevance of the facts in *Barnes*. There, the court held that a husband's signature on a proof of loss statement was insufficient to preserve his wife's claim where she had failed to sign a proof of loss statement that was <u>timely submitted</u> by her husband. *Id.* at 540. This holding bears upon this case in two respects. First, it demonstrates that the mere omission of a signature on an otherwise complete proof of loss statement can be fatal to a "substantial compliance" defense because its omission so significantly hinders an insurer's ability to protect itself against fraud. Second, even if the *Barnes* court had concluded that the insureds had "substantially complied," which it did not, the insureds' compliance in that case would still have pertained to a <u>timely submitted</u> proof of loss statement. In light of *Barnes*, the Appletons' failure

14

to file any proof of loss statement is much more troubling.

The Appletons also cite *Dellar, supra,* 433 N.W.2d at 383, in support of their proposition that a timely submitted proof of loss statement would have "add[ed] nothing to the mounds of information [they had] already provided." *Dellar*, however, is distinguishable. In *Dellar*, the plaintiff's home was destroyed by fire, after which she immediately notified her insurer of the loss. A thorough investigation followed, which included, but was not limited to, the plaintiff's tape-recorded statement, interviews of her neighbors and photographs and diagrams of the premises. Throughout the process, the insurer was aware that neither the plaintiff, nor her attorney, had a copy of the insurance policy. Further, the plaintiff was never provided the required proof of loss forms, and thus technically could not comply with the policy's sixty-day proof of loss requirement if she wanted to. Accordingly, sixty-eight days after the loss, she submitted a "contents evaluation" form and indicated that it was the only form she had with which to attempt compliance with the policy. On these facts, the *Dellar* court found that the information received by the insurer constituted the "functional equivalent" of a sworn proof of loss statement. *Id*. at 384.

In *Pieces of 8*, 2002 WL 31447078, the court accurately observed that *Dellar's* reversal of summary judgment in favor of the insurer was not premised solely on its finding that the information provided was *equivalent to* a proof of loss statement. Rather, the *Pieces of 8* court stated:

> The [*Dellar*] panel also relied on the fact that the insurer had failed to inform the insured that a sworn proof of loss was required to be filed within sixty-days of the loss and, in failing to do so, had breached its statutory duty to inform the insured of the materials necessary to constitute a satisfactory proof of loss. Also relevant to the panel's decision was the insurer's awareness that neither the insured nor her attorney had a copy of the insurance policy, and that steps were being taken to perfect a claim, but that a copy of the contract was necessary for that purpose. Yet the insurer failed to honor the insured's repeated requests for a copy of the contract until

15

after expiration of the sixty-day period for filing the proof of loss.

*Id*. at *2 (footnotes omitted).

In *Pieces of 8,* a case in which the plaintiffs also argued that they submitted the "functional equivalent" of a proof of loss and/or "substantially complied," the court rejected the plaintiffs' attempt to evade the sixty-day proof of loss requirement because, unlike in *Dellar*, the plaintiffs were <u>not prevented from complying</u>. *Id.* (emphasis added). Indeed, as in the present case, the *Pieces of 8* plaintiffs were notified of their obligations under the policy and provided with blank proof of loss forms. Accordingly, the *Pieces of 8* court concluded that neither "substantial compliance," nor "waiver" or "estoppel," operated to absolve the plaintiffs' untimely submission of their proof of loss forms.

Similarly, we cannot conclude under the facts of this case that the Appletons substantially complied with the policy's unambiguous terms such that Westfield should be estopped from strictly enforcing the sixty-day proof of loss requirement. Though the resulting circumstances presented here are unfortunate and the Court sympathizes with the Appletons loss, the law on this point is sufficiently clear. The Appletons' insurance contract imposed upon them a clear obligation timely to submit a proof of loss statement within sixty days, which they did not do, and the facts here simply do not implicate the legal theories and authorities posited by the Appletons to evade that requirement. We, therefore, must affirm the district court's grant of summary judgment to Westfield on this ground.

## E.    Dismissal With Prejudice

In a final effort to avoid the dispositive effect of the district court's decision, the Appletons argue that their counterclaim for breach of the insurance contract should have been dismissed, if at

all, "without" prejudice. Their argument, however, is premised on two Michigan cases that are inapplicable.

Unlike the substantive summary judgment issues, which we review *de novo*, we review whether a dismissal should be "with" or "without" prejudice for an abuse of discretion. *See Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990) ("[t]he decision to dismiss with prejudice is a harsh sanction, but the choice lies within the discretionary power of the district court, and we will not reverse absent a clear showing of abuse of discretion"). Based on our prior conclusions, and the inapplicability of the cases cited by the Appletons on this point, we do not consider the district court's dismissal of the Appletons' claims "with prejudice" to have been an abuse of discretion.

First, the Appletons cite *Yeo v. State Farm Insurance Co.*, 555 N.W.2d 893 (Mich. Ct. App. 1996). In that case, an insurance policy required the insured, as a condition precedent to filing suit against his insurer, to submit to an Examination Under Oath ("EUO"). As the Appletons did here, the plaintiff in *Yeo* provided the insurer with a detailed statement, but it was not under oath. The *Yeo* court found, first, that the insured's failure to submit to an EUO was not wilful. The court then held that dismissal of the insured's suit against the insurance company should be <u>without</u> prejudice, "which would allow [the] plaintiff to submit to an examination under oath and then [re-file] the action." *Id.* at 895. The court stated that, "as a general rule, a provision such as the one in the instant case is a condition precedent to filing the action, and the failure to comply with such a condition is not an absolute bar to recovery, but acts to suspend the right to recovery until the examination is held . . . . Therefore, in general, dismissal without prejudice is proper." *Id.* Notably, however, the policy's EUO requirement in *Yeo* did not have a time limit, as did the sworn "proof

17

of loss" requirement in the Appletons' policy. The insured in *Yeo*, accordingly, could still comply with the policy's terms, even after dismissal of his original action. No such option remains for the Appletons, making *Yeo* distinguishable.

Second, the Appletons cite *Wineholt, supra,* 179 F. Supp. 2d 742. In that case, unlike in *Yeo*, the insurance policy required the insured to submit a proof of loss statement within sixty days. On that point, therefore, *Wineholt* initially appears to apply. In that case, however, the insured complied with the deadline. The insurer rejected the statement, not because it was untimely, but because it was incomplete. Rather than resubmitting the statement, the insured sued.

The *Wineholt* court concluded that the insured had not substantially complied with the proof of loss requirement, but then, citing *Yeo*, dismissed the case *without prejudice*. The court wrote: "For purposes of a dismissal for failure to comply with the proof of loss requirement, the [c]ourt finds no distinction between an examination under oath and a proof of loss precluding a dismissal without prejudice to allow the insured an opportunity to seek insurance coverage and the insurer an opportunity to obtain a more complete proof of loss form." *Id.* at 753. The court found that, "as a matter of equity," it was best to dismiss the complaint without prejudice "to allow [the insured] to comply with the proof of loss requirement," and the court required the insured to "submit a supplemental proof of loss . . . within [sixty] days from the date of the [court's] Order." *Id.*

The distinctions between these two cases and the Appletons' case are clear. In *Yeo*, the condition precedent that the insured submit to an EUO, carried no time limit by which the condition had to be fulfilled. In *Wineholt,* the insured met the sixty-day time limit, but submitted an incomplete statement. Because the Appletons were subject to a deadline, *Yeo* is inapposite. And, because they did not meet the deadline, *Wineholt* is distinguishable. To apply the leniency afforded

18

in *Yeo* and *Wineholt* in this case would render the "within 60 days" portion of the proof of loss condition precedent meaningless. As previously outlined, however, rightly or wrongly, Michigan law clearly favors the enforcement of such deadlines, absent specific and limited circumstances. *See generally Dellar*, 433 N.W.2d 380*; Reynolds v. Allstate Ins. Co.*, 332 N.W.2d 583 (Mich. Ct. App. 1983).

Because none of the exceptions recognized by Michigan law apply under the facts of this case, we conclude that the Appletons' failure to comply with their policy's express provisions bars any affirmative claim they might have against Westfield. Having failed to satisfy the "proof of loss" condition precedent, they have no claim. Accordingly, we find that the district court did not abuse its discretion by dismissing the Appletons' counterclaims "with prejudice," and AFFIRM the district court's decision on that issue.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Westfield, and its dismissal of the Appletons' counterclaims.

19